

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Tom C. King
State Auditor and Efficiency Expert
Austin, Texas

Dear Sir:

Opinion No. O-1661
Re: Chapter 144 Acts 45th Legisla-
ture — General Appropriation
Bill — Section 2(a) — Bal-
ances in Institutional Funds.

We acknowledge receipt of your letter of November 4,
1939, asking for an opinion of this department as to whether
or not the balances in the institutional funds of the several
institutions named in the above captioned Act, and appropriat-
ed under Sec. 2(a) thereof, may be used for the following pur-
poses:

"(1) To meet the expense of maintaining inter-
collegiate athletic activities by supplementing, so
far as necessary, the revenues therefrom.

"(2) For the payment of public liability in-
surance premiums to protect students traveling in
connection with various activities of the college.

"(3) To pay the salary of a secretary to and
part of the office expenses of persons holding
positions provided for under Chapter 504 (General
Appropriation Bill), Section 1, the portion headed
'State Department of Education', subsections head-
ed, 'School Equalization Aid Division', and 'Voca-
tional Education Division'.

"(4) The purchase of band instruments.

"(5) The purchase of motor boats to be used
for the entertainment of students and employees
of the college.

24

(6) To pay a part of the premiums for group hospitalization and life insurance policies covering faculty members and for their benefit.

(7) To share the cost, with the city, of traffic lights placed at street intersections adjoining the campus."

Section 2(a) of the General Appropriation Act of the 45th Legislature (General Laws 45th Leg., p. 939) reads as follows:

"That all balances in the institutional funds of the several State institutions named in this Act, at the close of the fiscal year ending August 31, 1937, including balances in their revolving funds at that time, and the entire income to said funds during each of the two fiscal years ending August 31, 1938, and August 31, 1939, which are not otherwise appropriated for either or both of said fiscal years are hereby appropriated for the support, maintenance, operation, and improvement of said State institutions during each of the said fiscal years, respectively."

The Act as stated by you made appropriations for specific purposes to be paid from otherwise unappropriated funds in the State treasury (Sec. 5), but none of these specified purposes apparently could embrace any of the expenditures concerning which you make inquiry.

The obvious purpose of Sec. 2(a) was to appropriate the balances therein mentioned in accordance with the provisions therein made for the respective years mentioned as in the nature of largess or a bonus for the purpose of "the support, maintenance, operation and improvement of said State institutions during each of the said fiscal years respectively." This was within the power of the Legislature, and, we think, a sufficiently specific appropriation to meet the constitutional requirement. The real question of law presented by your inquiry is whether or not the enumerated items of expense inquired about come within the legislative intention and effort to provide support, maintenance, operation and improvement of such institutions.

This question is very much akin to the question of corporate powers of chartered institutions. The Legislature perhaps would have constitutional authority to make such appropriation, even though the expenses thus authorized might

be beyond the organic purposes of the institution, but we are not confronted with a question like that. We use the analogy of corporate power merely as indicating the scope of the legislative intention.

It is elementary that the corporate purpose,and therefore of the institutions under consideration, is that specifically defined by law evidenced by the charter or constating authority. The express power thus conferred, however, is not the complete ambit of power, but that power extends to all other powers reasonably necessary or helpful in the exercise of the express powers conferred. The incidental powers thus implied are as much within the institution's legal powers as are those conferred in express words.

Judge Thompson thus states the rule:

"It is but another statement of the principle of the preceding section to say that, although corporations have only such powers as are granted to them in their charter and governing statutes, yet when express power is granted to do a particular act this carries with it by implication the right to do any act which may be found reasonably necessary to effect the power expressly granted." (4 Thompson on Corp. Sec. 5642).

This general principle has been specially pronounced in Livestock Co. v. West Texas B. & T. Co., 111 S.W. 417 (writ refused), wherein it is said:

"Ordinarily a contract of suretyship is foreign to the object for which corporations are created, but there are exceptions to this rule one of which is that, though not expressly authorized, the corporation may become a surety when it is necessary to enable it to accomplish the object for which it was created, or whenever the particular transaction is reasonably necessary or proper in the conduct of its business."

The case of Ingram v. Texas Christian University, 196 S. W. 608 (writ refused) not only reaffirms this almost universal rule of corporate law, but is especially helpful in the present inquiry since it involved a corporate univer-

sity of learning. We quote from that opinion:

> "Applying the principles here announced
> to the facts of the instant case, it may be said
> that the University corporation had the power to
> make, either for itself or for the benefit of any
> of its correlated or auxiliary schools, a contract
> reasonably necessary for the promotion of its busi-
> ness or the fulfillment of the purposes for which
> it was incorporated, provided such contract was
> not in violation of the law or against public pol-
> icy. Since the court found that hospital facili-
> ties were necessary to give the students of the
> Medical School the clinical instruction required,
> we are of the opinion that it was within the cor-
> porate powers of the University corporation to
> make the contract for the rent of a building in
> which the hospital might be established. Nor do
> we think that the fact that the students of the
> Medical School had the privilege and opportunity
> of visiting other hospitals in the city, in con-
> nection with their course in clinics, would deter-
> mine the matter of the reasonable necessity of pro-
> viding hospital facilities more directly under the
> control of members of the faculty of the Medical
> School such as is here shown in the case of the
> hospital conducted by the Hospital Association.
> For it might be said with more force in the cases
> of Horst v. Lewis and Winterfield v. Brewing Co.,
> supra, that it was not reasonably necessary for
> the Brewing Company to become surety for the pay-
> ment of the rent of one of its customers, or one
> who would thereby become one of its customers, as
> it could find customers for its products without
> becoming such surety. But the test here, as there,
> is whether the act done was in the reasonable and
> lawful promotion of the purposes and objects for
> which the corporation was created. The very term
> 'university' implies an institution of many depart-
> ments, and the building up of one department of
> the school or the securing of students for one de-
> partment would naturally and reasonably tend to
> promote the welfare and growth of other depart-
> ments and of the institution as a whole."

Applying this rule of law to the construction of
Sec. 2(a) making the appropriation, it is the opinion of this
department that your inquiries should be answered categorical-
ly as follows:

1. Yes. The expense of maintaining intercollegiate athletic activities is well within the scope of the purposes of such institutions. Indeed, such activities appear to be appropriate not only for the physical development of students but they seem to have especial helpfulness in the advertising and, therefore, the general success of the institutions themselves.

2. No. There is no just relation between the insurance to protect students traveling in connection with the activities of the institution that would justify the payment of premiums therefor. Such insurance is not reasonably necessary, nor do we think it is even proper as an incident to the maintenance of the institution.

3. No. The provisions referred to in this question are not only not necessarily incident to the operation of the institutions under consideration, but they are only remotely, if at all, connected therewith. Besides, by express rider attached to the appropriation bill, it is provided, in effect, that the sums appropriated therein for the several purposes named shall be the maxima, and they shall not be supplemented from any other source. (Salaries and Other Provisions (b), Gen. Laws, Reg. Sess., 45th Leg. p. 1489) and the positions named in this question are purposes within that rider. The suggested use would therefore be in effect a supplementing of the appropriation for another wholly disconnected department.

4. Yes. The college spirit — the esprit de corps — of the student body is admittedly improved by the college band. In a very just sense the band thus contributes to the success of the institution.

5. No. There is not the necessary incidental need, and proximate contribution, that would make motor boats to be used for the entertainment of students and employees of the college a proper item of expense for the support, maintenance, operation and improvement of the institution. If a motor boat, why not an airplane or a yacht?

6. No. This inquiry is of a kind with inquiry No. (2)

7. No. The duty of providing lights and other usual and ordinary safeguards, such as those at street intersections, belongs to the city and the placing of such lights is not a reasonable incident to the exercise of the institutional powers of the college. Possibly a special traffic

protection peculiar to the individual situation maintained by the institution itself might come within the appropriation, but not the item as defined by you.

The foregoing represents the considered opinion of this department.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By     Ocie Speer
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN

OS-MR

APPROVED DEC 14, 1939

ATTORNEY GENERAL OF TEXAS